UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MING ZENG,                                                    **1:23-cv-10348-JGLC**

                              *Plaintiff,*

                                                              **ORAL ARGUMENT**
          -against-                                           **<u>REQUESTED</u>**

ELLENOFF GROSSMAN & SCHOLE LLP and
DOUGLAS S. ELLENOFF,

                              *Defendants.*
-------------------------------------------------------------------X


<div style="border:1px solid black; text-align:center;">

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO REMAND

</div>


**SCHWARTZ PERRY & HELLER, LLP**
***Attorneys for Plaintiff***
**3 Park Avenue, Suite 2700**
**New York, NY 10016**
**(212) 889-6565**

## TABLE OF CONTENTS

**SUBJECT**                                                      **PAGE**

TABLE OF AUTHORITIES                                             ii

PRELIMINARY STATEMENT                                           1

STATEMENT OF FACTS                                              2

STANDARD OF REVIEW ON A MOTION TO REMAND                        5

ARGUMENT

   POINT I    THE ARBITRATION AGREEMENT DOES
                NOT FALL UNDER THE CONVENTION                  6

   POINT II   THE ARBITRATION AGREEMENT
                IS A NULLITY UNDER THE EFAA                    9

CONCLUSION                                                     10

## TABLE OF AUTHORITIES

**CASE**                                                                    **PAGE**

Ayala v. Teledyne Defense Electronics,
    533 F. Supp. 3d 920 (C.D. Cal. 2021)                   8-9

Backer v. Cooperatieve Rabobank U.A.,
    338 F. Supp. 3d 222 (S.D.N.Y. 2018)                     5-6

California v. Atl. Richfield Co. (In re Methyl Tertiary
Butyl Ether Prods. Liab. Litig.),
    488 F.3d 112 (2d Cir. 2007)                             3

Cargill Intl. S.A. v. M/T Pavel Dybenko,
    991 F.2d 1012 (2d Cir. 1993)                            6-7

Citibank, N.A. v. De Nevares,
    2022 U.S. Dist. LEXIS 26136 (S.D.N.Y. Feb. 13, 2022)   8

Delo v. Paul Taylor Dance Found., Inc.,
    2023 U.S. Dist. LEXIS 133712 (S.D.N.Y. Aug. 1, 2023)   10

Hyegate, LLC v. Boghossian,
    2021 U.S. Dist. LEXIS 126421 (S.D.N.Y. July 6, 2021)   8

Jiakeshu Tech. Ltd. v. Amazon.com Servs., LLC,
    2023 U.S. Dist. LEXIS 107548 (S.D.N.Y. June 21, 2023)  8

Johnson v. Everyrealm, Inc.,
    2023 U.S. Dist. LEXIS 31242 (S.D.N.Y. 2023)            9-10

McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.,
    857 F.3d 141 (2d Cir. 2017)                             5

Pike v. Freeman,
    266 F.3d 78 (2d Cir. 2001)                              8

Pineda v. Sun Valley Packing, L.P.,
    2021 U.S. Dist. LEXIS 232437 (E.D. Cal. Dec. 3, 2021)  9

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999)                                     3

Scandanavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.,
    668 F.3d 60 (2d Cir. 2012)                              8

Shenzhen Zongheng Domain Network Co., Ltd.
v. Amazon.com Servs. LLC,
     2023 U.S. Dist. LEXIS 137307 (S.D.N.Y. Aug. 4, 2023)       8

Smith/Enron Cogeneration Ltd. Partnership
v. Smith Cogeneration Intl., Inc.,
     198 F.3d 88 (2d Cir. 1999)       6, 7

Sullivan v. Gelb,
     2023 U.S. Dist. LEXIS 210766 (S.D.N.Y. Nov. 27, 2023)       5

Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,
     126 F.3d 15 (2d Cir. 1997)       6

**STATUTES**       **PAGE**

9 U.S.C. § 202       8

9 U.S.C. §203       1, 4

9 U.S.C. §205       1, 4, 6

9 U.S.C. §402       1, 9-10

28 U.S.C. §1447(c)       5

## PRELIMINARY STATEMENT

The federal court lacks subject matter jurisdiction over this matter because (i) diversity between the parties does not exist and (ii) there is no federal question jurisdiction because "the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," ("the Convention") pursuant to 9 U.S.C. §203 and §205 does not apply.

This a case of sexual harassment and retaliation brought solely under the New York City Human Rights Law that was initially filed in state court. Defendants Ellenoff Grossman & Schole LLP ("EGS") and Douglas S. Ellenoff ("Ellenoff") removed this case pursuant to 9 U.S.C. §203 and §205, claiming that an arbitration agreement falls within the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). The Convention, however, only applies to international arbitration agreements and awards, which does not exist here. Accordingly, the arbitration agreement at issue would not apply to this case and cannot be the basis for federal jurisdiction.

The Convention does not apply to matters that are entirely domestic, as this case is. Plaintiff Ming Zeng ("Zeng") worked in New York City where the sexual harassment and retaliation occurred. Even the arbitration agreement that Defendants cite, which Zeng contends does not apply, calls for a hearing in New York City.

The only basis that Defendants proffer to deem this case as "international" is that Zeng is a Chinese national. As a matter of law, the protected categories of Zeng's national origin and citizenship/immigration status cannot be the basis for converting this matter into "an international arbitration case," as Defendants claim in their civil cover sheet. Even if the arbitration agreement fell within the Convention, it is unenforceable pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §402 ("the EFFA").

Accordingly, Defendants have not met their burden of demonstrating that this Court has subject matter jurisdiction over this matter. Accordingly, Zeng respectfully requests that this case be remanded to state court pursuant to 28 U.S.C. §1447(c).

## STATEMENT OF FACTS

On September 1, 2021, shortly after graduating from George Washington Law School in 2021, Plaintiff Ming Zeng ("Zeng") began working at ` as an associate attorney in the Capital Markets Group (Verified Complaint ¶¶5-6). EGS is a mid-sized law firm with headquarters in New York City, where Zeng lived and worked. (¶4).

Zeng was sexually harassed by Shang Jiang ("Jiang"), a more senior attorney to whom she reported and who had joined EGS in approximately May 2018. (¶6).

Jiang injected sex into her conversations with Zeng and created a sexually-charged environment for Zeng, including asking Zeng to identify the most handsome man at the firm, discussing a lesbian couple that Zeng did not know and talking about how monkey pox is mainly transmitted between gay men. (¶11). Jiang also inferred that Zeng should enter into a romantic relationship with her, which included, when discussing work visas, Jiang proposing to Zeng, "Marry me," rather than other methods of obtaining work authorization. (¶12).

Zeng had done nothing to warrant Jiang's interest in her. (¶17).

On March 2, 2023, Jiang's advances became even more blatant, as she told Zeng that the reason Zeng had a cat was because she was "lonely and horny" and said that Zeng was "spending too much money on the cat" and "should go get a relationship." (¶13). Jiang made it clear that she wanted Zeng to enter into a relationship with her, saying, "Don't keep the cat, keep me instead," which was a clear reference to Jiang living with Zeng in a romantic relationship. (¶14). Jiang bolstered her proposal by telling Zeng, "Your cat still needs you to buy pet insurance for her. I

2

don't even need you to buy insurance for me because EGS is paying for my insurance." (¶15).

Despite Zeng's trepidations about reporting Jiang's sexual advances, as she was a more senior Associate than Zeng and was well liked at the firm, Zeng reported Jiang's sexual harassment to Genesis Cevallos ("Cevallos") of EGS' Human Resources on March 8, 2023. (¶¶18-19). Zeng was advised that an investigation would be conducted by Mitchell Borger, an attorney at EGS. (¶20).

On March 29, 2023, while the investigation was purportedly still going on, EGS sent a firm-wide email announcing that Jiang had been named a "Top Woman Rising Star" in the annual Super Lawyers' New York Metro Top Woman 2022 list. (¶21).

On April 11, 2023, Zeng received a closing memo from Cevallos, stating that "appropriate follow up communications have occurred with Jiang" and that "Jiang has made clear that she is embarrassed and apologetic for causing you discomfort," while recognizing that "this was a stressful situation for [Zeng] and we appreciate your cooperation." (¶22). Jiang did not suffer any consequences for her sexual harassment of Zeng, as Jiang continued to work at EGS without incident, and was even touted for being named a "Rising Star." (¶12).

Zeng was terminated just over two weeks later, on April 27, 2023, by Defendant Douglas S. Ellenoff. (¶¶24-25). The reason Ellenoff gave for Zeng's termination was "poor performance," which flew in the face of all the positive feedback Zeng had received throughout her employment. (¶¶26). Ellenoff was unable to provide any examples of Zeng's poor performance and instead claimed it was Zeng's "aggressiveness" for seeking specific examples of her poor performance and made the ridiculous claim that the fact Zeng does not know why her performance was poor already proves why she was a poor performer. (¶27).

3

When Zeng continued to ask why she was being terminated for performance without any warning whatsoever, Ellenoff refused to further engage with Zeng, stating that "the decision has already been made" and, "This is a private practice, we can do whatever we want." (¶¶28-30). Ellenoff asked Zeng to leave immediately and threatened that he would call security if she caused a disturbance, an accusation that was completely unwarranted. (¶31). The real reason that Zeng was terminated was because she protested sexual harassment at EGS. (¶34).

Zeng filed a lawsuit against EGS and Ellenoff on October 24, 2023 in the Supreme Court of the State of New York, New York County, asserting claims of gender discrimination (sexual harassment) and retaliation against Defendants, and, in the alternative, against Ellenoff for aiding and abetting discrimination and retaliation. Zeng's claims were brought solely under the New York City Human Rights Law. Service was effectuated on October 26, 2023.

On November 27, 2023, EGS removed this matter to the Southern District of New York, asserting that this Court has subject matter jurisdiction pursuant to 9 U.S.C. §203 and §205. Specifically, EGS asserts that the existence of an arbitration agreement between EGS and Zeng falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").

EGS attached two arbitration agreements to its notice of removal, but only one of them was signed by Zeng. The first agreement EGS is entitled "Mutual Arbitration Agreement" between Zeng, EGS and Insperity PEO Services, L.P., which Zeng digitally signed on September 15, 2022.

The other agreement, which is not signed by anyone, is a three page "Arbitration Program" on EGS' letterhead. EGS has not provided any proof that Zeng received this agreement or signed it. EGS attached a "Policy Acknowledgement Status Report," which states that Zeng "acknowledged" three documents, but none of the three referenced documents are the "Arbitration

4

Program." Specifically, the three documents that Zeng "acknowledged" are: "Basic Employment Policy Acknowledgement," "Ellenoff Grossman & Schole LLP Employee Handbook" and "State Notices."

Accordingly, the only document that could be construed as a binding arbitration agreement is the Insperity agreement signed on September 15, 2022.

## STANDARD OF REVIEW ON A MOTION TO REMAND

The federal courts are only permitted to hear cases over which they have subject matter jurisdiction. See 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). In California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.), 488 F.3d 112, 121 (2d Cir. 2007), the Second Circuit recognized that "[s]ubject-matter limitations on federal jurisdiction serve institutional interests" that "keep the federal courts within the bounds the Constitution and Congress have prescribed," so that, "Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (Citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999); see also California, 488 F.3d at 124 (noting, "we have held that out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability.") (citations omitted); Sullivan v. Gelb, 2023 U.S. Dist. LEXIS 210766, at *15 (S.D.N.Y. Nov. 27, 2023) ("Any doubts regarding the propriety of removal are resolved in favor of remand, and federal courts construe the removal statute narrowly.").

It is Defendants' burden to demonstrate that the Court has jurisdiction to hear this case. See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc., 857 F.3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); Backer v. Cooperatieve

Rabobank U.A., 338 F. Supp. 3d 222, 231 (S.D.N.Y. 2018) ("The party seeking to preserve

removal has the burden of proving that subject matter jurisdiction exists.").

## ARGUMENT

## POINT I

### THE ARBITRATION AGREEMENT DOES NOT FALL UNDER THE CONVENTION

Defendants' only basis for removing this matter to federal court is 9 U.S.C. §205, which

permits removal where "the subject matter of the action or proceeding pending in state court relates

to an agreement or award calling under the Convention [on the Recognition and Enforcement of

Foreign Arbitral Awards]."

The Second Circuit has recognized that "the goal of the Convention is to promote the

enforcement of arbitral agreements in contracts *involving international commerce* so as to facilitate

international business transactions." Smith/Enron Cogeneration Ltd. Partnership v. Smith

Cogeneration Intl., Inc., 198 F.3d 88, 92 (2d Cir. 1999) (emphasis added). The Court has also noted

that arbitration agreements and awards fall within the Convention when they are "made within the

legal framework of another country, e.g., pronounced in accordance with foreign law or involving

parties domiciled or having their principal place of business outside the enforcing jurisdiction."

Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997)

(citing 9 U.S.C. § 202 ("an agreement or award arising out of such a relationship which is entirely

between citizens of the United States shall be deemed not to fall under the Convention unless that

relationship involves property located abroad, envisages performance or enforcement abroad, or

has some other reasonable relation with one or more foreign states.").

The Second Circuit has held that "three basic requirements must be met for a district court

to find jurisdiction under the Convention," namely that "the award (1) must arise out of a legal

relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." Cargill Intl. S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1018 (2d Cir. 1993); see also Smith/Enron Cogeneration, 198 F.3d at 94 (noting that "[t]he Convention's sweeping approach toward arbitral agreements … led many of the signatory states, including the United States, to adopt certain reservations to its implementation," including "the exclusion from the Convention of arbitral agreements and awards that are entirely domestic in scope.").

In this case, Defendants cannot meet their burden of showing that this matter "is not entirely domestic in scope," so that this Court does not have subject matter jurisdiction over this action. It cannot be disputed that the subject matter of this single-plaintiff employment discrimination case is entirely domestic in scope. The entirety of the facts occurred within New York City where Zeng was hired to work and where she lived.

Accordingly, Zeng's claims are brought solely under the New York City Human Rights Law. This case does not involve any law, persons or properties that are located outside of New York City. In fact, one of the two arbitration agreements that Defendants cite provides that New York Law applies and that any potential arbitration would take place in New York City. (Ex. B). In short, there is nothing substantiating Defendants claim in their civil cover sheet that this is "an international arbitration case." (Ex. C).

The basis for Defendants' claim that the Convention applies is that Zeng herself is from China and is authorized to work in the United States. Plaintiff's national origin and "immigration or citizenship status" – both of which are protected categories under the New York City Human Rights Laws – should not be the basis to render this case "international."

Plaintiff has been unable to locate many cases that address the unique issue of whether the Plaintiff's nationality alone can be the basis for applying the Convention. Particularly in the

7

Second Circuit, the overwhelming majority of cases on this topic include foreign corporations, foreign property, or individuals who worked abroad. See, e.g., Scandanavian Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 668 F.3d 60, 71 (2d Cir. 2012) (applying the Convention "because Scandinavian is a foreign corporation."); Pike v. Freeman, 266 F.3d 78, 85 n.4 (2d Cir. 2001) (applying the Convention where three parties were Cayman Island corporations); Shenzhen Zongheng Domain Network Co., Ltd. v. Amazon.com Servs. LLC, 2023 U.S. Dist. LEXIS 137307, at *9-10 (S.D.N.Y. Aug. 4, 2023) (finding that the dispute is not "entirely domestic" because "Petitioner is a Chinese company with its principal place of business in China."); Jiakeshu Tech. Ltd. v. Amazon.com Servs., LLC, 2023 U.S. Dist. LEXIS 107548, at *8 (S.D.N.Y. June 21, 2023) (applying the convention where the plaintiff was a Hong Kong corporation whose principal place of business was in China); Citibank, N.A. v. De Nevares, 2022 U.S. Dist. LEXIS 26136, at *3, 5 (S.D.N.Y. Feb. 13, 2022) (addressing an arbitration agreement of an employee who worked in Argentina and asserted a claim under Argentine law); Hyegate, LLC v. Boghossian, 2021 U.S. Dist. LEXIS 126421, at *3 (S.D.N.Y. July 6, 2021) (finding jurisdiction under §202 in a case involving the operation of a perlite mine in Armenia).

The cases that have addressed this issue have found that a plaintiff's nationality alone cannot cause an arbitration agreement to fall under the Convention. In Ayala v. Teledyne Defense Electronics, 533 F. Supp. 3d 920, 926-927 (C.D. Cal. 2021), the plaintiff asserted a discrimination case in state court and the defendant removed it to federal court citing the Convention. The court granted the plaintiff's motion to remand, rejecting the argument that "the mere presence of a foreign party is enough for an agreement to fall under the Convention" and noting that "the text of the statute does not offer such a suggestion." The court found that applying the language of Article I(1) of the Convention "is relatively straightforward as the arbitration process is sought in

California and the parties seek enforcement of the award in California. Both legally and in common usage this Agreement is not an instance of foreign arbitration." <u>Id</u>. at 927. The <u>Ayala</u> court also noted that finding that an arbitration agreement falls under the Convention "simply due to Plaintiff's status as a foreign national would likely create troubling results" and rejected such an argument on public policy grounds. <u>Id</u>. at 928; <u>see also</u> <u>Pineda v. Sun Valley Packing, L.P.</u>, 2021 U.S. Dist. LEXIS 232437, at *8 (E.D. Cal. Dec. 3, 2021) (remanding an action where the only basis for asserting that the Convention applied to the arbitration agreement was the fact the plaintiff was a Mexican citizen).

In this case, as in <u>Ayala</u>, the only "international" aspect of this case is Zeng's nationality and immigration/citizenship status. These protected categories alone are insufficient to render this case an "intentional" matter within the meaning of the Convention, when the reality is that this is a New York case among New York residents under New York City law. Defendants cannot meet their burden of showing that subject matter jurisdiction exists, so this matter should be remanded to state court.

## POINT II

### THE ARBITRATION AGREEMENT
### IS A NULLITY UNDER THE EFAA

The arbitration agreement at issue also does not fall within the Convention because it is unenforceable in light of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("the EFFA"), codified as 9 U.S.C. §402. Because Zeng asserts a claim for sexual harassment, the EFFA nullifies that arbitration agreement, so there is no agreement that could give rise to federal jurisdiction under the Convention.

The prohibition on arbitration applies to both Zeng's claim for sexual harassment and retaliation. In <u>Johnson v. Everyrealm, Inc.</u>, 2023 U.S. Dist. LEXIS 31242, at *21 (S.D.N.Y. 2023),

Judge Paul A. Engelmeyer carefully considered the language of the EFFA and received multiple amicus briefs. The court ultimately held that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable *with respect to the entire case relating to that dispute*." Id. at *46 (quoting 9 U.S.C. §402) (emphasis added); see also Delo v. Paul Taylor Dance Found., Inc., 2023 U.S. Dist. LEXIS 133712, at *14 (S.D.N.Y. Aug. 1, 2023) (denying a motion to compel arbitration under the EFFA and using "Judge Engelmayer's well-reasoned analysis of the EFAA as a guiding framework").

In this case, Zeng elected to pursue her claims in state court rather than arbitration. The arbitration agreement, therefore, is unenforceable and a nullity, and cannot be the basis for federal jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Zeng respectfully requests that the Court remand this matter to state court, and for such further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
bheller@sphlegal.com